UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MARCO McKINLEY by next friend and Mother, AVIS LOVE; and AVIS LOVE, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) No. 1:03-cv-269 |
| | ) *Edgar* |
| MARVIN LOTT, JAMES WARD, DARYL DALLAS, Individually And as Principal and Teachers of Brainerd High School, OFFICER CHAD SUTTLES, Individually and as a Chattanooga City Police Officer and School Resource Officer, and the HAMILTON COUNTY DEPARTMENT OF EDUCATION, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiffs Marco McKinley and his mother, Avis Love, bring this action against defendant Officer Chad Suttles, individually and in his official capacity as a City of Chattanooga Police Department School Resource Officer ("SRO"), pursuant to 42 U.S.C. § 1983 ("Section 1983") for violation of Mr. McKinley's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. This Court has previously dismissed all of plaintiffs' claims against defendants Marvin Lott, James Ward, Daryl Dallas, and the Hamilton County Department of Education. [Court Doc. Nos. 32, 63].

Defendant Chad Suttles moves for summary judgment dismissal of all of plaintiffs' claims against him. [Court Doc. No. 64]. Plaintiffs oppose the motion. [Court Doc. No. 71]. After a review of the record, the Court concludes that Officer Suttles' motion is well-taken

and will be **GRANTED**. Plaintiffs' claims against Officer Suttles will be **DISMISSED WITH PREJUDICE.**

**I.     Background**

This Court has previously summarized the facts in this case in two separate memorandum opinions. [Court Doc. Nos. 31, 62]. Therefore, the Court will discuss only such facts as are necessary to resolve the issues presented by Mr. Suttles' motion for summary judgment.

Viewing the record in the light most favorable to the plaintiffs, the facts pertaining to Officer Suttles' role in the alleged actions are as follows. In August 2002 Mr. McKinley was a sixteen year old child who attended Brainerd High School. [Court Doc. No. 30, Amended Complaint]. He resided with his mother. *Id.* Officer Suttles was employed by the City of Chattanooga Police Department as an SRO assigned to Brainerd High School. *Id.* [Court Doc. No. 64-2, Affidavit of Chad Suttles ("Suttles Aff."), ¶ 2].

On August 13, 2002 Daryl Dallas, a teacher at Brainerd High School, called Mr. McKinley out of his class to question him about whether he had been using marijuana. Amended Complaint; Suttles Aff., ¶ 3. Mr. McKinley denied that he had and returned to class. *Id.* Mr. Dallas then asked Officer Suttles to retrieve Mr. McKinley from his class and escort him to the office of the principal, Dr. Marvin Lott. Suttles Aff., ¶ 3. Shortly thereafter, Officer Suttles asked Mr. McKinley to step outside of his classroom and escorted him to Dr. Lott's office. Amended Complaint. Dr. Lott noticed a heavy smell of marijuana on each of the students. [Court Doc. No. 52, Affidavit of Dr. Marvin Lott ("Lott Aff."), ¶3].

Officer Suttles, along with Dr. Lott, Mr. Dallas, and Mr. Ward, another Brainerd high school teacher, all questioned Mr. McKinley and other students about whether they had been using marijuana that morning. Amended Complaint.

Mr. McKinley became confused about the question that Dr. Lott asked him. Amended Complaint. He responded yes to a question of whether he had been smoking. *Id.* However, he believed that Dr. Lott was asking him whether he had ever smoked marijuana in the past and not whether he had smoked marijuana that morning before school. *Id.* Dr. Lott and Officer Suttles both understood Mr. McKinley to acknowledge and admit that he had smoked marijuana that morning. Suttles Aff., ¶ 7; [Court Doc. No. 62, pp. 4-5; Lott Aff., ¶¶ 4-5]. The school teachers and administrators, as well as Officer Suttles discussed what to do following their belief that the students had admitted to being under the influence of marijuana at school. Suttles Aff., ¶ 7. Officer Suttles also contacted an assistant district attorney to discuss the charges that could be made against the students. *Id.* at ¶ 8.

Officer Suttles called for backup support to arrest and transport the students to Hamilton County Juvenile Court for booking on charges of being on school property while under the influence of marijuana. Suttles Aff., ¶ 7. Mr. McKinley was then informed he was being arrested, and he alleges that Officer Suttles handcuffed one of his hands to another student. [Court Doc. No. 64-4, Deposition of Marco McKinley ("McKinley Dep."), p. 175]. Officer Suttles and another officer transported the students to Juvenile Hall. Suttles Aff., ¶ 9.

Due to Officer Suttles' belief that Mr. McKinley had admitted to having smoked marijuana that morning, Officer Suttles believed that Mr. McKinley had committed the crime of being on public school property while under the influence of marijuana under Tennessee law and had violated Hamilton County Board of Education policy. Suttles Aff., ¶ 9.

Officer Suttles participated in the search of Mr. McKinley's person when he arrived at Juvenile Hall and placed him in a holding cell. McKinley Dep., p. 176. Mr. McKinley remained at Juvenile Court for "a number of hours" and was released that afternoon. *Id.* at pp.179-80. Officer Suttles never appeared or testified in court or any criminal proceeding relating to the arrest of Mr. McKinley. McKinley Dep., p. 180; Suttles Aff., ¶ 10. Mr. McKinley ultimately did not face any criminal charges related to this incident. Amended Complaint. Officer Suttles had no role in, nor did he have any responsibility for, applying any school disciplinary action against Mr. McKinley, including his transfer to an alternative school for a semester. Suttles Aff., ¶ 11; McKinley Dep., pp 183-84.

## II.     Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th

Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

**III.    Analysis**

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, plaintiffs must demonstrate two elements: "(1) the defendants deprived [plaintiffs] of a right, privilege, or immunity secured to [them] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471531, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)). Only the first prong of the test is relevant in this action because Officer Suttles does not appear to dispute that he was acting under color of state law as an SRO.

Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). Plaintiffs allege that Officer Suttles violated Mr. McKinley's Fourth, Fourteenth, and Fifth Amendment rights under the U.S. Constitution. U.S. Const. amend. IV; U.S. Const. amend. XIV; U.S. Const. amend. V.

A.  ***Claims against the City of Chattanooga***

The U.S. Supreme Court has held that municipalities are included as persons within the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under the statute. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A suit against an individual in his official capacity is "only another way of pleading an action against an entity of which the officer is an agent." *Id. See also St. John v. Hickey*, 411 F.3d 762, 775 (6th Cir. 2005).

However, a municipality may not be held liable under Section 1983 under a theory of respondeat superior. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691). Municipalities are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury. *See Monell*, 436 U.S. at 690.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiffs must prove that their particular injuries were "incurred because of the execution of the policy or custom." *Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997); *Gregory*, 220 F.3d at 442; *Doe v. Claiborne County, Tennessee*, 103 F.3d 495 (6th Cir. 1996); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

Plaintiffs may establish a policy or custom in several ways. There may be an official policy that defendants promulgated. *Cunningham*, 2003 WL 23471541 at *14. Plaintiffs may also show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably should know." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Such a custom must be "so widespread and commonly accepted as to in effect have the force of law." *Cunningham*, 2003 WL 23471541 at *14 (citing *Brown*, 520 U.S. at 404; *Monell*, 436 U.S. at 690-91). Plaintiffs can also establish the requisite policy by demonstrating that an official with policymaking authority has taken a single act relating to the subject matter or area at issue. *Cunningham*, 2003 WL 23471541 at *14.

Plaintiffs present no evidence of any policy or custom, either official or unofficial, on the part of the City of Chattanooga relating to the alleged violation of Mr. McKinley's constitutional rights. The City of Chattanooga presents evidence that it has no policies in place encouraging such violations. [Court Doc. No. 64-3, Affidavit of Lon Eilders ("Eilders Aff."), ¶¶ 2, Ex. 1]. It is plaintiffs' burden to produce evidence of a policy, an injury, and a link between the policy and the injury. *See Bennett*, 410 F.3d at 818-19. Plaintiffs fail to establish evidence of the requisite policy.

Plaintiffs could also demonstrate liability under Section 1983 against the City of Chattanooga by showing that the city failed properly to train and supervise its employees. *Cunningham*, 2003 WL 23471541 at *15. Plaintiffs demonstrate no evidence of a failure to train or supervise by the City of Chattanooga. Because plaintiffs fail to introduce evidence

-8-

creating a genuine issue of material fact regarding an unlawful policy or a failure to train by defendant City of Chattanooga, this Court will **DISMISS** plaintiffs' Section 1983 claims against the City of Chattanooga.

### B.     *Claims against Officer Suttles*

The Court must also analyze whether plaintiffs have created a genuine issue of material fact regarding whether Officer Suttles violated their constitutional rights in his individual capacity.

#### 1.     <u>Fourth Amendment Claim</u>

It is well-established that students do not lose their constitutional rights upon entering the "school house gate." *Tarter v. Raybuck*, 742 F.2d 977, 981 (6th Cir. 1984), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1749 (1985) (citing *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)).  School officials are restrained by the constitution, including the Fourth Amendment, as much as other state officials. *Tarter*, 742 F.2d at 981.  The Fourth Amendment protects individuals against unreasonable searches and seizures, and "the basic concern of the fourth amendment is reasonableness." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968)). Whether reasonableness exists will depend on the specific circumstances in any given case, and courts may modify Fourth Amendment principles to deal with special circumstances. *Tarter*, 742 F.2d at 981.

The Sixth Circuit has noted that the public school setting is one such special circumstance:

> The public school presents special circumstances that demand similar accommodations of the usual fourth amendment requirements. When society requires large groups of students, too young to be considered capable of mature restraint in their use of illegal substances or dangerous instrumentalities, it assumes a duty to protect them from dangers posed by anti-social activities . . . and to provide them with an environment in which education is possible. To fulfill that duty, teachers and school administrators must have broad supervisory and disciplinary powers.

*Tarter*, 742 F.2d at 982 (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 480 (5th Cir. 1982)). Federal courts have acknowledged that "the seizure of a student by a public school official implicates the Fourth Amendment, but 'only when the restriction of liberty is unreasonable under the circumstances then existing and apparent.'" *Bisignano v. Harrison Central Sch. Dist.*, 113 F.Supp.2d 591, 596 (S.D.N.Y. 2000) (quoting *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1014 (7th Cir. 1995)). The test developed by the U.S. Supreme Court in *New Jersey v. T.L.O.* determines whether a search or seizure is reasonable. 469 U.S. 325, 341-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1984); *Bisignano*, 113 F.Supp. 2d at 596; *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995). In *T.L.O.* the Supreme Court developed a two-part test for reasonableness of a search:

> Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the . . . action was justified at its inception," . . . second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," *ibid.* Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search

> and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*New Jersey v. T.L.O.*, 469 U.S. 325, 341-42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1984).

The Fourth Amendment also requires that an arrest be made upon probable cause. *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). Whether probable cause for arrest exists depends on: "whether the 'facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). Courts must assess this question by considering the perspective of the reasonable officer facing the situation rather than with the benefit of hindsight. *Lyons*, 417 F.3d at 573.

After reviewing the record the Court concludes that Officer Suttles' actions were reasonable under the circumstances. Officer Suttles removed Mr. McKinley from his classroom based on a request from Mr. Dallas who suspected that Mr. McKinley had entered school property under the influence of marijuana. Suttles Aff., ¶ 3. Mr. McKinley alleges that Officer Suttles participated to some degree in questioning Mr. McKinley in Dr. Lott's office. Dr. Lott and Officer Suttles both believed that Mr. McKinley admitted to having used marijuana that morning before school. Lott Aff., ¶¶ 4-5; Suttles Aff., ¶ 7. Tennessee law provides for a "zero tolerance" of drug offenses committed on school property. Tenn. Code Ann. § 49-6-4216. It provides that persons who are in possession of an illegal drug or under the influence of an illegal drug while on school property should be subject to "certain, swift

-11-

and reasoned punishment." *Id.* Possession of marijuana is a crime under Tennessee law. *See* Tenn. Code. Ann. §§ 39-17-408, 39-17-418. Before seizing and arresting Mr. McKinley by handcuffing him to another student and transporting him to Juvenile Court, Officer Suttles contacted an assistant district attorney to discuss the charges that could be brought against Mr. McKinley. Suttles Aff., ¶ 8. Officer Suttles then called for back-up assistance and transported Mr. McKinley to Juvenile Court. He may have also participated in searching Mr. McKinley at Juvenile Court. Mr. McKinley does not allege that Officer Suttles used excessive force in arresting him or conducted an unusually intrusive search. Mr. McKinley admits that Officer Suttles "was doing his job" and that he was not "mean." McKinley Dep., p. 163.

In light of *T.L.O.'s* requirement that a search and seizure be justified at its inception and reasonably related in scope to the circumstances, the Court concludes that Officer Suttles' seizure, search, and arrest of Mr. McKinley were reasonable. Considering Mr. McKinley's age, Officer Suttles' reasonable belief that Mr. McKinley admitted smoking marijuana that morning, the public school setting, Officer Suttles' conversation with an assistant district attorney regarding the charges, and the deference to be provided to school officials, the Court concludes that Officer Suttles' actions were not so unreasonable as to constitute a violation of Mr. McKinley's Fourth Amendment rights. The Court will therefore DISMISS Mr. McKinley's Fourth Amendment claim against Officer Suttles.

    2.    **Fourteenth Amendment Claim**

Mr. McKinley alleges that Officer Suttles violated his due process rights by "questioning me as being a teen." McKinley Dep., p. 184. It is unclear from the record what other actions Mr. McKinley alleges that Officer Suttles took that violated his Fourteenth Amendment rights. This Court previously noted that "the transfer of plaintiff from BHS to Washington Alternative School can implicate due process rights." [Court Doc. No. 31, p. 15]. With respect to Mr. McKinley's claim for violation of his procedural due process rights under the Fourteenth Amendment, this Court previously found that Mr. McKinley "was entitled to written notice and due process subsequent to the decision to transfer him" to Washington Alternative School. [Court Doc. Nos. 31, 62] (citing *Goss v. Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 738 (1975); Tenn. Code Ann. § 49-6-3402).

The record reveals that Mr. McKinley received notice of the right to appeal within the statutory time frame, understood he had a right to appeal, and decided not to appeal. [Court Doc. Nos. 62, 52, Exs. A, 4; McKinley Dep., pp. 81-82]. Further, Officer Suttles asserts that he had no role in taking any school disciplinary action against Mr. McKinley. Suttles Aff., ¶ 11. Mr. McKinley presents no evidence creating a genuine issue of material fact regarding whether Officer Suttles played any role in his transfer to the alternative school or whether Officer Suttles violated any other procedural right to which he was entitled. In addition, this Court has previously noted that in the context of arrest, "the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment." *Henderson v. Reyda*, 2005 WL 1397030 *4 (E.D. Tenn. 2005) (relying on *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)).

As the Court explained *supra*, Mr. McKinley fails to create a genuine issue of material fact regarding whether Officer Suttles violated Mr. McKinley's Fourth Amendment rights. For these reasons, the Court will DISMISS Mr. McKinley's procedural due process claim against Officer Suttles.

With respect to Mr. McKinley's substantive due process claim, this Court noted, "[i]n the school discipline context 'a substantive due process claim will succeed only in the 'rare case' where there is 'no "rational relationship" between the punishment and the offense.'" [Court Doc. No. 31, p. 15] (quoting *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000); *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)). Further, the Sixth Circuit has determined that when a plaintiff brings a substantive due process claim under Section 1983 within the law enforcement context based on any alleged conduct other than excessive force, the claim "must be based either on a violation of an explicit constitutional guarantee (e.g., a fourth amendment illegal seizure violation) or on behavior by a state actor that shocks the conscience." *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990).

In the instant action Mr. McKinley does not allege that Officer Suttles used excessive force in arresting him. *See* McKinley Dep., p. 63. Moreover, the Court has already determined *supra* that Officer Suttles' actions did not result in an illegal search and seizure in violation of the Fourth Amendment. Finally, nothing in the record suggests that Officer Suttles' actions were conscience-shocking. Officer Suttles had no role in the school disciplinary actions taken against Mr. McKinley. Suttles Aff., ¶ 11. Officer Suttles' actions in questioning and arresting Mr. McKinley were reasonable under the circumstances

-14-

Case 1:03-cv-00269 Document 72 Filed 10/27/05 Page 14 of 17 PageID #: 91

considering the facts, including: Mr. Dallas' allegation that he believed Mr. McKinley and other students had been smoking marijuana; Officer Suttles' belief that Mr. McKinley had confessed to using marijuana that morning; the fact that Mr. McKinley was on public school property; and Mr. McKinley's arrest was made after consultation with school officials and an assistant district attorney. Mr. McKinley admits he was released to his mother that afternoon and that no criminal charges were ever brought against him. McKinley Dep., pp. 179-80; Amended Complaint. The Court concludes that based on the record, Mr. McKinley fails to state a genuine issue of material fact regarding whether Officer Suttles violated his substantive or procedural due process rights.

Mr. McKinley's complaint also alleges a violation of his equal protection rights under the Fourteenth Amendment. To state a claim against Officer Suttles for violation of the Equal Protection Clause, Mr. McKinley bears the burden to demonstrate that Officer Suttles treated similarly situated individuals differently from Mr. McKinley based on his membership in a protected class. *See Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (1996). Mr. McKinley fails to demonstrate any evidence that he was treated differently than any similarly situated individuals outside of an alleged protected class. For these reasons, the Court will **DISMISS** Mr. McKinley's Fourteenth Amendment claim against Officer Suttles.

### 3. Fifth Amendment Claim

Federal courts have determined that a violation of the Fifth Amendment privilege against self-incrimination only occurs when an incriminatory statement that is obtained

-15-

unlawfully is introduced at trial. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); *Grooms v. Marshall*, 142 F.Supp.2d 927, 936-37 (S.D. Ohio 2001); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1988); [Court Doc. No. 62, p. 11].

In the instant action Mr. McKinley admits that he never faced a criminal proceeding relating to the alleged incident of use of marijuana. [Court Doc. No. 61, pp. 69-70]. Further, Mr. McKinley admits that there was "never any court appearance that Officer Suttles . . . ever testified in." McKinley Dep., p. 180. Therefore, no unlawfully obtained statement of Mr. McKinley's was ever introduced at trial, and Mr. McKinley did not suffer a violation of his Fifth Amendment right against self-incrimination. For this reason, the Court will **DISMISS** Mr. McKinley's Fifth Amendment claim against Officer Suttles.

### C. *Claims by Plaintiff Avis Love*

This Court has previously dismissed the claims of Ms. Love against defendants Dr. Lott, Mr. Dallas, Mr. Ward, and the Hamilton County Board of Education. [Court Doc. No. 31]. For the reasons asserted in that memorandum opinion, the Court concludes that Ms. Love lacks standing to bring her own claim for alleged violations of Mr. McKinley's constitutional rights. In *Jenkins v. Carruth* this Court stated, "[t]he law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights." 583 F.Supp. 613, 616 (E.D. Tenn. 1982) (citations omitted); *see also Meador v. Cabinet for Human Resources*, 860 F.2d 1079 *1 (6th Cir. 1988). For these reasons, the Court will **DISMISS** Ms. Love's claims against Officer Suttles **WITH PREJUDICE**.

## IV. Conclusion

After reviewing the record and the applicable law, the Court concludes that no genuine issue of material fact exists regarding plaintiffs' claims against Officer Suttles, individually or in his official capacity, brought pursuant to 42 U.S.C. § 1983. These claims will be **DISMISSED WITH PREJUDICE**. The Court concludes that plaintiff Avis Love lacks standing to bring her claims. Her claims against Officer Suttles will also be **DISMISSED WITH PREJUDICE**. Defendant's motion for summary judgment will be **GRANTED**.

A separate judgment will enter.

                                      */s/ R. Allan Edgar*
                                      R. ALLAN EDGAR
                                   UNITED STATES DISTRICT JUDGE